Lane, C. J.
The propriety of the court’s refusing to hold the bill liable to all equities which might be set up against Green, depends upon the following proposition :
That Green could never set up the note, it having been given for his accommodation ; that Williams did not acquire the note in the common course of business, as a purchaser, for a consideration passing at the time, but that it was a paper whose obligation was extinct, because it had done its office; and having *been taken as security for a prior debt, and under circumstances calculated to awaken suspicion, such as the death of Joseph Bosson, the embarrassments of Green, the long time of credit on the face of the bill, and the period since its date in which it had remained unemployed in Green’s hands; and the case of Riley and Van Amringe v. Johnson, 8 Ohio, 526, is relied on to sustain the position.
The justice of this view depends on assuming that Williams acquired his right to the paper in suit, after it was duo, by the transfer from Dana, and as collateral security for his liabilities for Green. Upon this assumed fact, the case referred to might apply, and as the authority of that decision is questioned, it might be necessary for the court to examine its grounds. But the facts do not justify the defendant in this position. Although Williams has said he held it as such security, he is not concluded by an inadvertent admission, if he really possesses other rights. He did not take the paper by any new assignment from Dana, or derive any rights to it from Green, after its dishonor; but he was one of the series of indorsers upon it, and if he paid the debt, he created *57 or retained a right to it as his own, to enable him to pursue his remedy against its earlier parties. Ho holds it, therefore, not as a purchaser of a dishonored security, but as the indorser of a bill not due ; and his rights are referable to the time of his indorsement, not to the time when he took the note from Dana. It was, then, not wrong for the court to decline instructing the jury that the possession of the bill acquired from Dana, under the pretense of inquiring into his liabilities, conferred no right of action..
The other considerations to which the defendants allude, were entirely proper to be laid before the jury. The bill was not applied by Green to the purpose for which it was intended; and such misapplication, if proved to have boon made with the knowledge of Williams, would involve him in all the consequences attaching to Green. Stone v. Vance et al., 6 Ohio, 246. To this end the suspicious circumstances were the subjects of animadversion and comment to establish notice. But it is plainly not law to hold the indorser of paper, *not due, responsible fora misuse to which ho is not privy, except in such eases as gaming notes, or those void by statute. The death of William Bosson, one of the partners of the firm whose surviving members are sued, does not invalidate the paper. It was accepted before, and, at the time of his death, was in the possession of Green. It received its form and vitality before his death, and no act of any member of the firm is necessary to add anything to it.
The opinion expressed by the court, that the facts shown in the depositions of Dana, Outcalt, and Hall are prima facie evidence of a payment by Williams, is claimed to be not sustainable. The necessity of this proof of payment, in the first instance, is not perceived ; because the holder of a bill is entitled to a suit, unless some circumstances exist to render his title suspicious. Yet if the bill was taken up by Green, an earlier party, no right of action would accrue to Williams. The bill in suit was, in fact, regained from the Commercial Bank by means of money, acquired by the discount of another, drawn by Green on the Bossons, indorsed by Dana and Williams. The money raised on the loan was placed to Williams’ sole account, and was paid over on the bill in suit on his check. It was, therefore, apparently Williams’ money ; and if the bill were a real transaction, this would be complete proof. It was still competent for the defendants to show the money, in fact, belonged to Green, but the evidence makes no such *58 proof. At the maturity of the second bill, the indorsers were under the necessity of providing for its payment. Their arrangements, among themselves, were of no moment to the defendants; and none of their remedies against the acceptor’s are taken away, if they received money by means of 'Green's draft, and complied with their own responsibility, unless Green paid it; and the facts, instead of showing this, .make it probable that the payment of the third draft is fastened upon Williams, from Green’s insolvency, and from the discharge of Dana, through the omission of the notary.
But the principle most relied on, as erroneous in this charge, is that which regards the rule of a former decision of this *court, not applicable to bills of exchange. In the case of Douglass v. Waddle, 1 Ohio, 413, it is held that in accommodation notes, the foundation of loans from banks, the several parties whose names are used for the benefit of the person for whom the loans are made, are presumed to be joint securities only, and each can recover from the other, whether maker or indorser, his proportion only. That decision was made in 1824, and the liability of the parties occurred at a still earlier period. At that time the form of obtaining accommodations from banks was on notes only; upon such notes a local usage obtained, holding the sureties on each paper as joint securities only, and not liable to each other in the order of their coming upon the notes. It is this local rule which is recognized and established as law by the authority of that case.
In the law of real property, each state has its local rules, and its own courts are competent to establish and maintain them. But in the law of contracts, especially in mercantile contracts, the principles are nearly uniform throughout the civilized world; they are established by a wider experience, and are maintained in a greater uniformity, in consequence of the great number of tribunals through whom they are expressed. Our state has become, and is becoming, the scene of large commercial operations, and it is of much moment that the principles on which justice is administered should be made to conform, as far as possible, to the general law merchant. The intrinsic propriety of this step is increased by remembering that the foreigner will find the general law merchant governing the tribunal which sits by our side, and will obtain there a different rule of justice than our own citizen. The intro *59 duction of bills, as a basis of bank accommodation, has taken place long since the decision of Douglass v. Waddle. They are of mercantile origin, and the law merchant should govern their use. The right of the indorsee to hold all earlier parties responsible to him, is undoubted: and it is plainly our duty to follow these rules, unless bound by our own precedents. But we see no reason to extend the rules of Douglass v. Waddle beyond the kind of paper to which local usage had applied it; and it is ^sufficient evidence that the parties, by adopting paper of a different form, did not rely on its protection. This stop has heretofore boon taken on the circuit. Walker v. Worthington, Ross Supreme Court, 1835. And the court unite in the opinion that the judge committed no error. ' Judgment affirmed.